# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RENEA B. LAXTON, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>Defendant. ) | 1:18CV446 |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Renea B. Laxton brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for social security disability insurance benefits. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits alleging a disability onset date of June 6, 2013. (Tr. 266-72.)[1] The application was denied initially and upon reconsideration. (*Id.* at 240-43, 248-51.) An administrative law judge ("ALJ") held a hearing and then determined, on May 3, 2017, that Plaintiff was not disabled. (*Id.* at 152-62, 168-202.) On March 23, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-5.)

---

[1] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 6, 2013. (Tr. 154.) The ALJ next found the following severe impairments at step two: traumatic brain injury, right mild sensorineural hearing loss and left mild to moderate sensorineural hearing loss, post-traumatic stress disorder, unspecified depressive disorder, neurocognitive disorder, and migraines. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in,

Appendix 1. (*Id.* at 154-56.) The ALJ next set forth Plaintiff's residual functional capacity ("RFC") and determined that she could perform light work, except that

> she should avoid concentrated exposure to unprotected heights, moving machinery and other workplace hazards. She should avoid even moderate exposure to excessive noise. She is limited to simple routine repetitive tasks in unskilled work and not at a production rate. She should be in a low stress environment, meaning no constant changes in routine, no complex decision-making, and no crisis situations. She can have occasional interaction with the public, supervisors and coworkers, and she can stay on task for two hours at a time throughout the workday.

(*Id.* at 156.)

At the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work as a restaurant manager, correction case manager, and correction officer. (*Id.* at 161.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 161-62.) Consequently, the ALJ found that Plaintiff was not disabled. (*Id.* at 162.)

**IV. ISSUES AND ANALYSIS**

Plaintiff raises several issues on appeal. First, Plaintiff argues that the ALJ's evaluation of her headaches is not supported by substantial evidence. (Docket Entry 11 at 8-13.) Next, Plaintiff contends that the ALJ's evaluation of Plaintiff's ability to focus and concentrate is not supported by substantial evidence. (*Id.* at 13-14.) Third, Plaintiff contends that, in assessing the severity of her symptoms, the ALJ failed to consider her recent neurological treatment, misrepresented her mental-health treatment, and failed to consider her past work history and

desire to work. (*Id.* at 15-17.) Lastly, Plaintiff argues that new and material evidence regarding her headaches requires remand. (*Id.* at 17-21.) For the following reasons, the undersigned finds that Plaintiff's arguments are unpersuasive.

## 1. The ALJ's evaluation of Plaintiff's headaches is supported by substantial evidence.

Plaintiff argues the ALJ's evaluation of Plaintiff's headaches is not supported by substantial evidence. (Docket Entry 11 at 8-13.) More specially, Plaintiff takes issue with the ALJ's findings regarding Plaintiff's headaches when formulating the RFC. RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) ("[an] RFC is [a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart,* 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling ['SSR'] 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations

4

omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit held that there is no *per se* rule requiring remand if a function-by-function analysis is not performed. However, the Court held that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be appropriate. *Id.* (internal quotation and citations omitted). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[,]" which "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted).

Here, the Court first notes that, at step two, the ALJ found Plaintiff's migraines to be a severe impairment. (Tr. 154.) Then ALJ then found that Plaintiff could perform a reduced

5

range of light work. (*Id.* at 156.) With regards to Plaintiff's headaches, the ALJ discussed Plaintiff's testimony at the hearing in which she stated that she is unable to work because of balancing issues, difficulty focusing and concentrating, and her constant battle with migraines and dizziness. (*Id.* at 156, 180-84.) The ALJ ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely consistent with the medical evidence." (*Id.* at 157.)

The ALJ then summarized Plaintiff's migraine history dating back to her June 2013 vehicle accident, which caused post-concussive syndrome symptoms, including headaches, nausea, dizziness, and visual problems. (*Id.* at 157, 365, 375, 378.) For her headaches, Plaintiff was seen by a neurologist, Dr. Russ Bodner, who started Plaintiff on occipital nerve blocks in late 2013 and prescribed her Topamax. (*Id.* at 158, 495-97.) By May of 2014, Plaintiff had reported improvements in her headaches to Dr. Bodner and to a neuropsychologist. (*Id.* at 158, 560 (occipital nerve blocks "have ameliorated some of [Plaintiff's] headache discomfort"); 484 (nerve blocks have "decreased her headaches from every single day to 15 days per month"). A few months later, Plaintiff reported to her primary physician, Dr. Dana Martini, that Plaintiff's headaches were ongoing despite continued injections, and that the headache pain was affecting her ability to focus and concentrate in speech therapy. (*Id.* at 158, 604.) Dr. Martini agreed that discontinuing therapy until the headache pain was controlled was appropriate. (*Id.* at 604, 676.)

In November of 2014, Plaintiff went to Duke Medicine where she reported that she was having chronic migraines daily with no relief from the nerve blocks. (*Id.* at 158, 885.) Dr.

6

Timothy Collins prescribed Plaintiff a trial of Verapamil and Depakote. (*Id.* at 887.) Approximately six months later, Plaintiff advised her psychiatrist that she had been approved for Botox and received her first Botox treatment at the beginning of April 2015. (*Id.* at 158, 898.) The ALJ also noted that Plaintiff went to the emergency room in February of 2016 where she reported that she was still receiving Botox for her migraines. (*Id.* at 158, 909.) By September 2016, Plaintiff reported that she had stopped taking all of her medications after one of her new medications caused a rash. (*Id.* at 158, 906.)

In considering the evidence of Plaintiff's headaches, the ALJ concluded that the evidence in the record did not support Plaintiff's testimony. (*Id.* at 158.) The ALJ further stated that Plaintiff had not "submitted persuasive evidence that her headaches have not responded at least to some degree to prescribed treatment." (*Id.*) Lastly, the ALJ indicated that Plaintiff "might have been receiving Botox injections for at least a year and she did not need to go to the ER for resolution of an intractable migraine." (*Id.*) The ALJ then stated that the limitations in the RFC regarding light work, excessive exposure to unprotected heights, moving machinery and other workplace hazards were all to address Plaintiff's headache impairment. (*Id.*)

Substantial evidence supports the ALJ's evaluation and findings regarding Plaintiff's headaches. The ALJ carefully articulated such findings, and Plaintiff's arguments to the contrary are unpersuasive. Plaintiff relies on the hearing testimony to demonstrate the frequency and extent of her headaches which she contends the ALJ did not explain in the decision. (Docket Entry 11 at 11-12.) However, as stated above, substantial evidence does

7

Case 1:18-cv-00446-LCB-JLW   Document 15   Filed 05/29/19   Page 7 of 18

not fully support Plaintiff's testimony. Plaintiff asks this Court to impermissibly re-weigh the evidence to find that the frequency and extent of her headaches precluded her performance of competitive work prior to the date of the decision. Alternatively, Plaintiff seeks additional restrictions related to work absences and decreased productivity. However, it is not in the purview of this Court to re-weigh the evidence. The ALJ provided legitimate reasons for the limitations set forth in the RFC, and the evidence does not compel greater restrictions than those set forth for Plaintiff's headaches. As such, Plaintiff's argument fails.

### 2. The RFC sufficiently accounts for Plaintiff's concentration and focus deficiencies.

Plaintiff next contends that the ALJ's evaluation of Plaintiff's ability to focus and concentrate is not supported by substantial evidence. (Docket Entry 11 at 13-14.) The ALJ found that Plaintiff retained the mental functional capacity to stay on task for two hours at a time throughout the workday. (Tr. 161.) In his decision, the ALJ acknowledged neuropsychological testing conducted in April of 2014. (*Id.* at 155, 560-65.) Plaintiff had no difficulty understanding testing instructions and performed within normal ranges on many tasks sensitive to cerebral dysfunction, including memory and speeded mental set-shifting. (*Id.* at 155, 159, 562.) The ALJ highlighted Dr. Shelley Leininger's report that Plaintiff appeared to maintain adequate task engagement, but that the evaluation results should be viewed with caution because Plaintiff's performance fluctuated. (*Id.* at 159, 561.) As the ALJ noted, Dr. Leininger could not provide "an objective opinion regarding [Plaintiff's] global cognitive abilities due to multiple violations on stand-alone and embedded validity indicators." (*Id.* at 155, 563.) Plaintiff needed to gain better control over her symptoms because "headaches,

somatic symptoms, and negative self-talk may interfere with concentration when carrying out tasks and subsequently depleting mental resources;" thus, Dr. Leininger recommended psychotherapy. (*Id.* at 159, 563.) The ALJ also noted that Dr. Bodner concurred that Plaintiff needed psychotherapy and indicated his own concern about whether Plaintiff had actual cognitive issues versus being possibly factitious or related to anxiety in nature. (*Id.* at 159, 488.)

Next, the ALJ highlighted Plaintiff's improvements in her mood, depression and anxiety. (*Id.* at 159, 604, 625.) Dr. Nelly Welsch, who provided treatment from December 2014 through September 2016, typically reported that Plaintiff exhibited intact attention and concentration. (*Id.* 155, 159, 896, 898, 900, 903, 904.) The ALJ noted that Dr. Welsch's medication management was "not interchangeable with psychotherapy." (*Id.* at 159.) Dr. Welsch did make changes to Plaintiff's medications which she found Cymbalta and Trazadone to be "helpful." (*Id.* at 159, 902.) However, Plaintiff went six months without her medications and did not call in for requests. (*Id.* at 159. 902.) When Plaintiff returned in January of 2016, Dr. Welsch restarted her on Cymbalta and Trazadone, and also prescribed Aricept. (*Id.* at 903.) Plaintiff did seek treatment at the emergency room for an allergic reaction which she deemed was due to the Cymbalta. (*Id.* at 909.) However, Plaintiff only returned to Dr. Welsch for two more visits in which she reported in September of 2016 that she "stopped all of her medications." (*Id.* at 906.) Plaintiff did not feel that her symptoms were so severe such that medication was necessary. (*Id.* at 907.)

9

Ultimately, the ALJ acknowledged that Plaintiff had some cognitive issues which warranted consideration in the RFC. (*Id.* at 160.) However, citing the respective evidence from Drs. Leininger and Welsch, the ALJ concluded that despite Plaintiff's cognitive issues, she could be limited to simple, routine, repetitive tasks in unskilled work, at a non-production rate and in a low-stress environment, and she could stay on task for two hours at a time throughout the workday. (*Id.*) The ALJ explained that he considered, as one factor, the question of Plaintiff's true cognitive issues, as raised by Drs. Leininger and Bodner, but was persuaded by "the great weight of the evidence [that] did not support the severity of [Plaintiff's] alleged functional limitations." (*Id.*) The ALJ further stated that Plaintiff's observed mental functioning, "even in the absence of ongoing medication management and therapy," (*id.*) supported his conclusion.

Here, the ALJ's decision is supported by substantial evidence. Plaintiff's arguments that Drs. Leininger's and Welsch's notes suggest alternative findings than that of the ALJ is unpersuasive. As stated above, the evidence supports the ALJ's findings and there is nothing in the record that suggests that Plaintiff should have been given greater limitations in the RFC. Although the ALJ cited to *some* portions of a treatment note (and not the note in its entirety), that does not suggest that his findings are not supported by substantial evidence. Indeed, the ALJ here has built "an accurate and logical bridge from the evidence to [the] conclusion." *Clifford,* 227 F.3d at 872. *See also Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied.") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*,

10

137 F. 3d 799, 803 (4th Cir. 1998)).  Ultimately, the ALJ properly weighed and considered Plaintiff's cognitive issues, and accounted for such limitations in the RFC.  That Plaintiff disagrees with such findings does not necessitate remand in this matter.

### 3. The ALJ's assessment of the severity of Plaintiff's symptoms is supported by substantial evidence.

Plaintiff next argues that the ALJ's assessment of the severity of Plaintiff's symptoms is not supported by the evidence in the record.  (Docket Entry 11 at 15-17.)  A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Craig*, 76 F.3d at 594 (citing 20 C.F.R. § 404.1529(b)).

If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled.  *Id.* at 595-96.  While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged.  *Id.*  Where the ALJ has considered the relevant factors, 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed

11

her demeanor, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).[2]

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that he had carefully considered the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. 157.) The ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)

The ALJ then provided reasons, backed by substantial evidence, to credit Plaintiff's subjective claims less than fully. The same evidence that supports the ALJ's RFC finding, as discussed above, supports the ALJ's assessment of Plaintiff's subjective allegations. Plaintiff's arguments to the contrary are unpersuasive. Plaintiff contends that the ALJ failed to consider her recent neurological treatment after May of 2014. (Docket Entry 11 at 15.) However, this

---

[2] Applicable to ALJ decisions on or after March 28, 2016, the SSA superseded SSR 96-7p with SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.* at *2. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character," *id.*, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," *id.* at *1 n.1. Although the ALJ's decision in this case post-dates the effective date of SSR 16-3p (*see* Tr. 162), the ALJ did not reference SSR 16-3p in his recitation of the standards for evaluating a claimant's subjective complaints (*see* Tr. 156-57). If there is an error here, it is a harmless error, as the ALJ's analysis conformed with SSR 16-3p in that it did not utilize the term "credibility," but rather properly considered whether Plaintiff's statements held consistency with the evidence of record. (*See* Tr. 156-57.)

assertion is erroneous. The ALJ acknowledged that Plaintiff had "not submitted evidence" that she had seen Dr. Bodner since May of 2014, but the ALJ continued his analysis by recognizing that Plaintiff was approved for Botox in April of 2015, and that she reported in September of 2016 that neurology put her on new medication that caused a rash. (Tr. 158.)

Plaintiff also points to the ALJ's statements regarding her lack of compliance with mental health treatment. (Docket Entry 11 at 15-16.) Again, Plaintiff's assertion is erroneous. The ALJ was consistent in his statements regarding Plaintiff's participation in psychotherapy and psychiatric treatment. After finding that Plaintiff had only been compliant with psychotherapy for six months, the ALJ then acknowledged Plaintiff's medication management with Dr. Welsch and evidence related to psychiatric treatment for Plaintiff. (*Id.* at 159-60, 899-905.) As previously discussed above, Plaintiff ultimately stopped taking all of her medications because her symptoms were not such that necessitated medicine. Despite such, the ALJ still considered the totality of the record, and addressed Plaintiff's mental health issues by providing mental limitations in the RFC, that are supported by substantial evidence. (*Id.* at 156, 160.) Plaintiff's argument thus fails.

Additionally, Plaintiff contends that the ALJ failed to consider her work history. (Docket Entry 11 at 16-17.) Plaintiff points to her long work history prior to her car accident and to her statements to physicians that she was looking to return to gainful employment. (Tr. 273, 604.) A claimant's prior work record is relevant to an analysis of a claimant's subjective allegations, but it is only one factor among many. *See* 20 C.F.R. § 404.1529(c)(3) (requiring

ALJ to consider "information about [a claimant's] prior work record" in assessing subjective complaints).

Here, Plaintiff's work history was discussed in detail during the administrative hearing. (Tr. 175-80.) Also, the ALJ indicated that he considered the entire record in assessing Plaintiff's RFC. (*Id.* at 156.) Moreover, as discussed above, the ALJ considered significant additional evidence relevant to Plaintiff's subjective complaints. The ALJ also considered the third-party function report of Plaintiff's sister who indicated that Plaintiff took her granddaughter a half mile to school, engaged in housework, gardened seasonally, went to church and socialized with family. (*Id.* at 160-61, 303-05.) Consequently, "[g]iven that the ALJ relied on multiple permissible factors in reaching the decision to discount Plaintiff's [subjective complaints], any failure by the ALJ to expressly discuss Plaintiff's work history amounts to harmless error." *Propst v. Colvin*, 1:16CV00082, 2016 WL 5107093, at *8 (M.D.N.C. Sept. 20, 2016) (unpublished) (Auld, M.J.), *recommendation adopted*, slip op. (M.D.N.C. Oct. 31, 2016) (Biggs, J.); *see also Neely v. Colvin*, No. 1:15CV983, 2017 WL 120931, at *10 (M.D.N.C. Jan. 12, 2017) (unpublished) (same). In sum, Plaintiff fails to demonstrate any material error in the ALJ's analysis of her subjective complaints.

### 4. The evidence submitted to the Appeals Council does not warrant remand.

Plaintiff next contends that the evidence submitted to the Appeals Council warrants remand. (Docket Entry 11 at 17-21.) The Appeals Council will review a case if, among other things, it "receives additional evidence that is new, material, and relates to the period on or before the date of the [ALJ's] hearing decision, and there is a reasonable probability that the

additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). However, such cases under this provision are subject to a showing of good cause by the claimant as to why the additional evidence had not been submitted pursuant to 20 C.F.R. § 404.935. 20 C.F.R. § 404.970(b). The evidence is new if it is not duplicative or cumulative, and material if there is a reasonable *probability* that the new evidence would have changed the outcome. *Id.* § 404.970(a)(5).[3]

Here, Plaintiff requested review with the Appeals Council on May 5, 2017 and simultaneously requested additional time to submit evidence. (Tr. 265.) Plaintiff's request for additional time was granted, and the Appeals Council informed Plaintiff that any additional evidence would be considered if it is "new, material and relates to the period on or before the date of the hearing decision." (*Id.* at 146.) The Appeals Council further informed Plaintiff that she must demonstrate that the additional evidence shows there is a "reasonable probability" that it would change the outcome of the decision, and there is "good cause" for why it was not submitted earlier. (*Id.*)

On March 23, 2018, the Appeals Council denied Plaintiff's request for review, remarking the following:

> You submitted Medical records from Duke Health dated November 20, 2014 (25 pages). This evidence is not new because it is a copy of Exhibit 19F. We did not consider and exhibit this evidence.

---

[3] Well-established Fourth Circuit law defined "material" as a reasonable *possibility* the new evidence would have changed the outcome of the case. *See Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011); *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). However, the most recent versions of 20 C.F.R. § 404.970 increase a claimant's burden from showing a reasonable *possibility* to a reasonable *probability*.

15

> You also submitted Medical records from Duke Health dated March 4, 2015 through February 21, 2017 (132 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

(*Id.* at 2.) Ultimately, the Appeals Council included the medical records in the record, but did not exhibit the evidence. (*See id.* at 6-145.)

Substantial evidence supports the decision of the Appeals Council and Plaintiff's arguments to the contrary are unpersuasive. The evidence submitted to the Appeals Council regarding Plaintiff's headaches is not inconsistent with the findings of the ALJ. Plaintiff contends that "contrary to the ALJ's decision, [Plaintiff] did seek treatment for her headaches after 2014 . . . ." (Docket Entry 11 at 21.) This statement is misplaced.

In his decision, the ALJ recognized that Plaintiff received treatment from her neurologist for headache symptoms after 2014. (Tr. 158.) The ALJ noted that Plaintiff went to an emergency room in February 2016 and said she was on Botox at that time, (*id.* at 158, 909), and told her psychiatrist in September 2016 that neurology put her on a new medication that caused a rash so she stopped all medications (*id.* at 906). The ALJ noted, "[i]t appears she might have been receiving Botox injections for at least a year and she did not need to go to the ER for resolution of an intractable migraine." (*Id.* at 158.) The evidence submitted to the Appeals Council further supports the ALJ's conclusion that Plaintiff's headaches have responded "at least to some degree to prescribed treatment." (*See id.* at 158; 23 (Plaintiff reports "improvement in her headaches with decreased frequency of headaches" after second

16

Botox injection)). Plaintiff ultimately felt like the Botox was no longer effective and her physician prescribed her more medication. (*Id.* at 90, 91.) However, based upon the ALJ's analysis in the decision, the status of Plaintiff's headaches post-2014 was generally considered when nonexertional limitations were added to the RFC. (*Id.* at 158.)

Despite Plaintiff's argument, the nonexertional limitations set forth in the RFC adequately address Plaintiff's headaches and the additional evidence does not justify additional RFC limitations. To the extent Plaintiff relies upon *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), that case is unpersuasive as the additional evidence here did not fill an "evidentiary gap." *Id.* at 707. Ultimately, because the additional evidence does not show a reasonable probability that it would have changed the outcome of the ALJ's decision, it neither calls into question the ALJ's findings nor warrants a remand for further evaluation.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of The Commissioner of Social Security or Remanding the Cause for a Rehearing (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

May 29, 2019
Durham, North Carolina

18